UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JON ANTHONY NORRIS,<br><br>                    Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | NO:  2:15-CV-13-RMP<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND REMANDING<br>FOR AWARD OF BENEFITS |

BEFORE THE COURT are Plaintiff John Anthony Norris's Motion for Summary Judgment, **ECF No. 13**, and Defendant Carolyn W. Colvin's Motion for Summary Judgment, **ECF No. 16**. The Court has reviewed the motions and administrative record, and is fully informed.

## BACKGROUND

John Anthony Norris protectively filed an application for Disability Insurance Benefits (DIB) on December 13, 2006, and an application for Supplemental Security Income (SSI) on December 31, 2006. ECF No. 9-2 at 12,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 1

Tr. 11. In both applications, Mr. Norris alleged disability beginning June 1, 2004. *Id.* Mr. Norris' applications were denied initially on April 13, 2007, and upon reconsideration on June 19, 2007. *Id.* Mr. Norris requested a hearing, which was held via videoconference before Administrative Law Judge ("ALJ") Gene Duncan on September 18, 2009. *Id.* Mr. Norris was present and represented by counsel Randy Fair. *Id.* The ALJ heard testimony from medical expert Marian Martin, Ph.D., and vocational expert ("VE") Polly A. Peterson. *Id.*

Subsequent to the hearing, a problem was discovered with the hearing record. *Id.* As a result, the Appeals Council remanded the case on February 17, 2012. *Id.* The Appeals Council vacated the ALJ's prior decision and directed the ALJ to conduct a supplemental hearing. *Id.*

A supplemental hearing was held via videoconference before ALJ Duncan on December 4, 2012. *Id.* Mr. Norris was present and represented by counsel Randy Fair. *Id.* The ALJ heard testimony from medical expert Stephen Rubin, Ph.D., and VE Thomas A. Polsin. *Id.*

The ALJ found that Mr. Norris had not engaged in substantial gainful work, as defined in 20 C.F.R. §§ 404.1572(a) and 416.920(b), since June 1, 2004. ECF No. 9-2 at 15, Tr. 14. Further, the ALJ found that Mr. Norris had the following severe impairments as defined by 20 C.F.R. §§ 404.1520(c) and 416.920(c): degenerative disc disease, T-12 compression fracture (2004), depressive disorder,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS ~ 2

polysubstance abuse (in reported remission), personality disorder, attention deficit hyperactivity disorder/reading disorder, and somatoform disorder. *Id.*

However, the ALJ found that Mr. Norris did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526) and 20 C.F.R. Part 416, Subpart I, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). ECF No. 9-2 at 16, Tr. 15. The ALJ further found that Mr. Norris had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is able to perform simple routine work as defined by our regulations. The claimant is able to stand or walk for four hours in an eight-hour day and requires a sit/stand option. The claimant is able to occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and/or scaffolds. The claimant cannot operate vibrating equipment. The claimant can occasionally push/pull light objects. The claimant can frequently reach, but only occasionally engage in a full-extended reach (a full arm's length) with his right upper extremity. The claimant cannot frequently turn his head. The claimant cannot engage in an intensive torqueing or twisting of his upper body. The claimant should not have concentrated exposure to gases, dusts or fumes. The claimant should not have direct access to drugs or alcohol and should not be in charge of the safety of others. The claimant is able to have superficial contact with the public. The claimant would be an occasional distraction to co-workers once a month. The claimant should work independently and not in coordination with other co-workers.

ECF No. 9-2 at 17, Tr. 16.

Given Mr. Norris' age, education, work experience, and RFC, the VE testified that there were a number of jobs available in the national economy for an individual sharing his characteristics. ECF No. 9-2 at 24, Tr. 23. The ALJ then found that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* The ALJ concluded that Mr. Norris was not under a disability as defined by the Social Security Act. *Id.* Mr. Norris's application was denied on January 17, 2013. ECF No. 9-2 at 9, Tr. 8.

Mr. Norris filed a request for review by the Appeals Council, which was denied on November 21, 2014. ECF No. 9-2 at 2, Tr. 1. Mr. Norris then filed a complaint in the District Court for the Eastern District of Washington on January 16, 2015, ECF No. 1, and the Commissioner answered the complaint on March 30, 2015. ECF No. 8. This matter is therefore properly before the Court pursuant to 42 U.S.C. § 405(g). Mr. Norris filed a motion for summary judgment on July 24, 2015. ECF No. 13. The Commissioner filed a cross motion for summary judgment on September 1, 2015. ECF No. 16. Mr. Norris filed a reply memorandum on October 29, 2015. ECF No. 21.

## STATEMENT OF FACTS

The facts of this case are set forth in the administrative hearing transcripts and record, ECF No. 9. Mr. Norris was 36 years old when he applied for DIB and

SSI, 38 years old at the initial hearing, and 42 years old at the supplemental

hearing. *See* ECF No. 9-2 at 12, Tr. 11. Mr. Norris worked a number of different

jobs, including as a ski lift operator and construction worker, until 2004. *See* ECF

No. 9-6 at 30–36, Tr. 405–411.

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a

Commissioner's final decision. 42 U.S.C. § 405(g). A reviewing court must uphold

the Commissioner's decision, determined by an ALJ, when the decision is

supported by substantial evidence and not based on legal error. *See Jones v.*

*Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). Substantial evidence is more than a

mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d

1112, 1119 n.10 (9th Cir. 1975). Substantial evidence "means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted).

The reviewing court should uphold "such inferences and conclusions as the

[Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*,

348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a

whole, not just the evidence supporting the Commissioner's decision. *Weetman v.*

*Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *see also Green v. Heckler*, 803 F.2d 528,

530 (9th Cir. 1986) ("This court must consider the record as a whole, weighing

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 5

1   both the evidence that supports and detracts from the [Commissioner's]

2   conclusion."). "[T]he key question is not whether there is substantial evidence that

3   could support a finding of disability, but whether there is substantial evidence to

4   support the Commissioner's actual finding that claimant is not disabled." *Jamerson*

5   *v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997).

6        It is the role of the trier of fact, not the reviewing court, to resolve conflicts

7   in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one

8   rational interpretation, the reviewing court may not substitute its judgment for that

9   of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Thus,

10  if there is substantial evidence to support the administrative findings, or if there is

11  conflicting evidence that will support a finding of either disability or nondisability,

12  the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226,

13  1229–30 (9th Cir. 1987).

## SEQEUNTIAL PROCESS

15       Under the Social Security Act (the "Act"),

16       an individual shall be considered to be disabled . . . if he is unable to
         engage in any substantial gainful activity by reason of any medically
17       determinable physical or mental impairment which can be expected to
         result in death or which has lasted or can be expected to last for a
18       continuous period of not less than 12 months.

19  42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be

20  determined to be under a disability only if his impairments are of such severity that

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 6

1  the claimant is not only unable to do his previous work but cannot, considering the

2  claimant's age, education, and work experience, engage in any other substantial

3  gainful work which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

4  "Thus, the definition of disability consists of both medical and vocational

5  components." *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).

6      The Commissioner has established a five-step sequential evaluation process

7  for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4) and

8  416.920(a)(4). Step one determines if the claimant is engaged in substantial gainful

9  activities. If the claimant is engaged in substantial gainful activities, benefits are

10  denied. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i).

11      If the claimant is not engaged in substantial gainful activities, the ALJ, under

12  step two, determines whether the claimant has a medically severe impairment or

13  combination of impairments. If the claimant does not have a severe impairment or

14  combination of impairments, the disability claim is denied. 20 C.F.R.

15  §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii).

16      If the impairment is severe, the evaluation proceeds to step three, which

17  compares the claimant's impairment to a number of listed impairments

18  acknowledged by the Commissioner to be so severe as to preclude substantial

19  gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); *see also*

20  20 C.F.R. §§ 404, Subpt. P, App. 1 and 416, Subpt. I, App. 1. If the impairment

1    meets or equals one of the listed impairments, the claimant is conclusively

2    presumed to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

3        Before proceeding to step four, the claimant's RFC is assessed. 20 C.F.R.

4    §§ 404.1545(a)(1) and 416.945(a)(1). An individual's RFC is the ability to do

5    physical and mental work activities on a sustained basis despite limitations from

6    any impairments. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

7        If the impairment is not one conclusively presumed to be disabling, the

8    evaluation proceeds to step four, where the ALJ determines whether the

9    impairment prevents the claimant from performing work he has performed in the

10    past. If the claimant is able to perform his previous work, the claimant is not

11    disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).

12        If the claimant cannot perform his previous work, the final step considers

13    whether the claimant is able to perform other work in the national economy in light

14    of his RFC, age, education, and past work experience. 20 C.F.R.

15    §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

16        At step five, the initial burden of proof rests upon the claimant to establish a

17    prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d

18    920, 921 (9th Cir. 1971). The claimant satisfies this burden by establishing that a

19    physical or mental impairment prevents him from engaging in his previous

20    occupation. The burden then shifts to the Commissioner to show that (1) the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 8

claimant can perform other substantial gainful activity and (2) a "significant

number of jobs exist in the national economy" which the claimant can perform.

*Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES

Mr. Norris alleges that the ALJ committed reversible error by (1) improperly

rejecting medical opinion evidence; (2) improperly determining that Mr. Norris

was not credible; (3) improperly rejecting lay testimony; and (4) improperly

determining under step five that Mr. Norris was not disabled. *See generally* ECF

No. 13.

## DISCUSSION

### I.    Rejection of Medical Opinion Evidence

Mr. Norris argues that the ALJ both improperly rejected medical opinion

evidence and failed to fully account for other, purportedly accepted, medical

opinions when formulating the RFC. *Id.* at 5–27.

### A. Legal Standard for Rejecting Medical Opinion Evidence

"[T]he Commissioner must provide 'clear and convincing' reasons for

rejecting the uncontradicted opinion of an examining physician." *Lester v. Chater*,

81 F.3d 821, 830 (9th Cir. 1995). If controverted, "the opinion of an examining

doctor . . . can only be rejected for specific and legitimate reasons that are

supported by substantial evidence in the record." *Id.* at 830–31. The same analysis

applies to the medical opinions of treating physicians. *Id.* at 830. "[I]t is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

Concerning medical opinion evidence, "[t]he ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity. Determining whether inconsistencies are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount the opinions . . . falls within this responsibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999).

**B. Dr. Marian F. Martin, Ph.D.**

Dr. Marian Martin testified as an impartial medical expert at Mr. Norris' first hearing before the ALJ on September 18, 2009. ECF No. 9-2 at 107, Tr. 106. Dr. Martin reviewed the record in Mr. Norris' case prior to testifying during the hearing. ECF No. 9-2 at 108, Tr. 107. Dr. Martin opined that Mr. Norris suffered from major depressive disorder, antisocial personality disorder, and substance dependence (in remission). ECF No. 9-2 at 116, Tr. 115. Dr. Martin testified that, without factoring in drug and alcohol use, Mr. Norris would have mild functional limitations in activities of daily living and moderate difficulties maintaining social functioning, with concentration, persistence, and pace, carrying out activities within a schedule, maintaining regular attendance, working in coordination with

others, and interacting with the public, supervisors, and coworkers. ECF No. 9-2 at 120, 122–23, Tr. 119, 121–22. Dr. Martin testified that Mr. Norris' limitations would increase from a "moderate" to a "marked" range with drug and alcohol use. ECF No. 9-2 at 121, Tr. 120. Dr. Martin testified that an individual with moderate limitations could do routine, simple work. ECF No. 9-2 at 126, Tr. 125.

Further, Dr. Martin testified that, due to Mr. Norris' social limitations, "he would probably do best in a work situation where he does . . . you know, where he has minimal contact with other people and is as limited as possible with a supervisor." ECF No. 9-2 at 124, Tr. 123. Dr. Martin noted that Mr. Norris "would possibly get resentful if supervisors told him what to do. He would kind of want to do things his own way or on his own schedule and if he was . . . if he were told to do it differently he'd get sort of resentful or irritated or angry." ECF No. 9-2 at 125, Tr. 124. Concerning interaction with supervisors, Dr. Martin concluded that Mr. Norris "would just kind of basically leave or just not come back to work." ECF No. 9-2 at 125, 128, Tr. 124, 127. Dr. Martin testified that, despite Mr. Norris' antisocial personality disorder, "[t]here are lots of people out in the world with personality disorders that do work." ECF No. 9-2 at 141, Tr. 140.

While the ALJ noted that Dr. Martin had testified at the first hearing, ECF No. 9-2 at 12, Tr. 11, the ALJ did not substantively address Dr. Martin's testimony in the January 17, 2013, decision. *See generally* ECF No. 9-2 at 12–25, Tr. 11–24.

However, the ALJ did substantively address Dr. Martin's opinion and testimony in the prior decision, later vacated by the Appeals Council. ECF No. 9-3 at 18–19, Tr. 205–06. The ALJ accorded "significant weight to the competent hearing testimony of Dr. Martin due to her medical expertise, her familiarity with the Social Security regulations and the consistency of her testimony with the medical history, objective medical findings, and other medical opinions contained in the record." ECF No. 9-3 at 18, Tr. 205. While noting the "mild" and "moderate" limitations opined by Dr. Martin, the ALJ omitted any discussion of Mr. Norris' social limitations in interacting with the public, coworkers, and supervisors. *See id.* The ALJ ultimately included RFC limitations pertaining to interaction with coworkers and the public, but not as to supervisors. ECF No. 9-3 at 15, Tr. 202.

Mr. Norris alleges that (1) the ALJ erred by not addressing Dr. Martin's opinion in his second decision and (2) the error was not harmless as the ALJ did not address or incorporate all the limitations opined by Dr. Martin. ECF No. 13 at 8. The Commissioner, while conceding that the ALJ erred in failing to discuss the weight afforded Dr. Martin's testimony, argues that the ALJ committed harmless error as Dr. Martin's testimony is consistent with the ALJ's RFC finding. ECF No. 16 at 22–23.

1     The ALJ is bound to "evaluate every medical opinion" submitted into

2   evidence. 20 C.F.R. §§ 404.1527(c) and 416.927(c). As such, the ALJ erred by

3   omitting any discussion of Dr. Martin's opinion from his supplemental decision.

4     The Commissioner insists that, although the ALJ erred, such error is

5   harmless as the ALJ previously had relied on Dr. Martin's testimony to determine

6   that Mr. Norris was not disabled. ECF No. 16 at 23. "A decision of the ALJ will

7   not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679

8   (9th Cir. 2005). An error is harmless when it is "inconsequential to the ultimate

9   nondisability determination." *Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050,

10  1055 (9th Cir. 2006).

11    As discussed above, although the ALJ did discuss the majority of

12  Dr. Martin's opinions as to Mr. Norris' functional limitations, *see* ECF No. 9-3 at

13  19, Tr. 206, the ALJ did not discuss Dr. Martin's findings as to Mr. Norris'

14  capacity to interact appropriately with supervisors. *See* ECF No. 9-2 at 124–27,

15  141, Tr. 123–27, 140. Neither RFC finding, from both the initial and supplemental

16  decision, placed any limitation on Mr. Norris' ability to interact and take direction

17  from supervisors. *See* ECF No. 9-2 at 18, Tr. 17; ECF No. 9-3 at 14–15, Tr. 201–

18  02. As an "RFC that fails to take into account a claimant's limitations is defective,"

19  *Valentine v. Comm'r Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009), the

20

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 13

1   ALJ erred as the RFC finding failed to incorporate any limitation as to Mr. Norris'

2   ability to appropriately interact with supervisors.

3       Although Dr. Martin testified that this limitation would not necessarily

4   restrict Mr. Norris from working in any capacity, ECF No. 9-2 at 141, Tr. 140, the

5   Court cannot conclusively determine that the ALJ's error was "inconsequential to

6   the ultimate nondisability determination." *See Stout*, 454 F.3d at 1055; *see also*

7   ECF No. 92–93, Tr. 91–92 (testimony from VE that individual with marked

8   limitation in their "ability to interact appropriately with supervisors," among other

9   social limitations, would not be expected to "maintain employment for any

10  substantive period of time in any job"). Although Dr. Martin did not testify that

11  Mr. Norris had a "marked" impairment, the Court is unable to conclude that a

12  "moderate" limitation in Mr. Norris' ability to interact with supervisors would not

13  have some effect on the VE's testimony as well as the ultimate disability

14  determination.

15      The ALJ also omitted any discussion of Dr. Martin's finding that Mr. Norris

16  had moderate limitations in concentration, persistence, and pace from the RFC

17  finding. Similar to the ALJ's omission of Dr. Martin's opinion concerning

18  interaction with supervisors, the Court cannot conclude that the ALJ's omission

19  was harmless. The Court cannot determine how a moderate limitation as to

20

concentration, persistence, and pace might affect Mr. Norris' RFC or the VE's

responses to the hypothetical questions posed by the ALJ.

As, in his initial decision, the ALJ purported to give Dr. Martin's testimony

"significant weight," ECF No. 9-3 at 18, Tr. 205, the Court must conclude that the

ALJ credited Dr. Martin's findings as to Mr. Norris' functional limitations. The

ALJ, however, failed to incorporate all of Dr. Martin's opined limitations into the

RFC. Therefore, the Court finds that the ALJ committed reversible error when

omitting any discussion of Dr. Martin's opinion concerning Mr. Norris' ability to

interact with supervisors and limitation as to concentration, persistence, and pace

from the RFC finding.

**C. Dr. Stephen Rubin, Ph.D.**

Dr. Stephen Rubin testified as an impartial medical expert at Mr. Norris'

supplemental hearing before the ALJ on December 4, 2012. ECF No. 9-2 at 12,

Tr. 11. Dr. Rubin reviewed the record in Mr. Norris' case prior to testifying during

the hearing. ECF No. 9-2 at 42, Tr. 41. Dr. Rubin diagnosed Mr. Norris with a

variety of psychological disorders including ADHD, major depressive disorder, a

pain disorder, and a substance addiction disorder (in remission). ECF No. 9-2 at

43, Tr. 42. While Dr. Rubin testified that "I don't think any [of Mr. Norris'

psychological disorders] in particular or even all combined make it impossible for

him to hold a job," Dr. Rubin opined that Mr. Norris "has had difficulties holding

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 15

1  jobs, and a lot of it has to do with interacting with others." ECF No. 9-2 at 44,

2  Tr. 43. Dr. Rubin, however, agreed with Dr. Catherine MacLellan's suggestion that

3  Mr. Norris' "prognosis is poor." ECF No. 9-2 at 46, Tr. 45. Dr. Rubin testified that

4  Mr. Norris had "moderate difficulties in maintaining concentration" and "[a] real

5  problem getting along with the public and coworkers." ECF No. 9-2 at 47, 49,

6  Tr. 46, 48. The ALJ gave "significant weight" to Dr. Rubin's opinion. ECF No. 9-2

7  at 21, Tr. 20.

8      Mr. Norris argues that the ALJ, while purporting to give Dr. Rubin's opinion

9  "significant weight," failed to fully account for Dr. Rubin's findings concerning

10 moderate difficulties in maintaining concentration, interacting with the public and

11 coworkers, and in being motivated to work. ECF No. 13 at 9. The Commissioner

12 argues that Dr. Rubin's testimony is consistent with the ALJ's decision. ECF

13 No. 16 at 25.

14     The ALJ adequately incorporated Dr. Rubin's conclusion concerning

15 interaction with the public and coworkers into the RFC finding. The ALJ noted

16 that Mr. Norris could "have superficial contact with the public," "would be an

17 occasional distraction to co-workers once a month," and "should work

18 independently and not in coordination with other co-workers." ECF No. 9-2 at 18,

19 Tr. 17. These limitations are sufficiently similar to the Dr. Rubin's opinion that

20 Mr. Norris would have "[a] real problem getting along with the public and

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 16

1    coworkers." ECF No. 9-2 at 49, Tr. 48; *see also Turner v. Comm'r of Social Sec.*,

2    613 F.3d 1217, 1223 (9th Cir. 2010) (the ALJ need only incorporate limitations

3    consistent with relevant and accepted medical opinion for the RFC to be

4    sufficiently inclusive).

5        The ALJ, however, provided no rationale for failing to incorporate

6    Dr. Rubin's opinions concerning Mr. Norris' limitations with concentration or

7    issues with motivation. As an "RFC that fails to take into account a claimant's

8    limitations is defective," *Valentine*, 574 F.3d at 690, the Court concludes that the

9    ALJ erred when failing to account for these limitations in the RFC findings. The

10    Commissioner urges the Court to conclude that the ALJ merely utilized an

11    alternative, yet nonetheless rational, interpretation of Dr. Rubin's opinion. ECF

12    No. 16 at 26 (citing *Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1193

13    (9th Cir. 2004)). However, there is a difference between providing a rational

14    interpretation that differs from a claimant's desired interpretation and not

15    providing an interpretation at all. As the ALJ failed to account for or provide a

16    reason for rejecting Dr. Rubin's opinions concerning concentration and motivation,

17    the Court finds that the ALJ erred in this regard.

18        The ALJ's error is not harmless. As the ALJ purported to give Dr. Rubin's

19    testimony "significant weight," ECF No. 9-2 at 21, Tr. 20, the Court must conclude

20    that the ALJ credited Dr. Rubin's findings as to Mr. Norris' functional limitations.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 17

Although Dr. Rubin testified that these limitations would not necessarily restrict Mr. Norris from working in any capacity, ECF No. 9-2 at 44, Tr. 43, the Court cannot definitely conclude that the ALJ's error was "inconsequential to the ultimate nondisability determination." *See Stout*, 454 F.3d at 1055. In essence, the Court cannot know how incorporating these limitations would affect the RFC finding or the VE's testimony in response to the ALJ's hypothetical questions. Therefore, the Court finds that the ALJ committed reversible error when failing to provide the required "clear and convincing" reasons for rejecting Dr. Rubin's testimony concerning concentration and motivation.

**D. Drs. Leslie Postovoit, Ph.D., and James Bailey, Ph.D.**

Dr. Leslie Postovoit completed a Mental Residual Functional Capacity Assessment based on a review of Mr. Norris' records on March 23, 2007. ECF No. 9-7 at 139–43, Tr. 614–618. Dr. Postovoit opined that Mr. Norris was able to understand and carry out simple tasks and some complex tasks, could manage intermittent, casual contact with the public and coworkers, and was able to adapt to occasional changes in the workplace. ECF No. 9-7 at 141, Tr. 616. In a check-the-box form, Dr. Postovoit further rated Mr. Norris as being moderately limited in his ability to carry out detailed instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, accept instructions, and respond appropriately to criticism from supervisors. ECF No. 9-7

at 139–40, Tr. 614–15. On June 14, 2007, Dr. James Bailey affirmed

Dr. Postovoit's findings. ECF No. 9-7 at 184, Tr. 659. The ALJ gave

Drs. Postovoit's and Bailey's findings "great weight." ECF No. 9-2 at 21, Tr. 20.

Mr. Norris alleges that the ALJ, while purporting to give "great weight" to

Drs. Postovoit's and Bailey's opinions, failed to adequately incorporate the

medical opinions into the RFC finding. ECF No. 13 at 10. The Commissioner

argues that the ALJ adequately incorporated Drs. Postovoit's and Bailey's

narrative findings and was not required to consider the check-the-box assessment

form. ECF No. 16 at 21–22.

Drs. Postovoit and Bailey opined, in narrative format, that Mr. Norris

suffered limitations concerning his ability to carry out complex tasks, interact

appropriately with coworkers and the public, and adapt to occasional changes in

the workplace. ECF No. 9-7 at 141, Tr. 616. The ALJ specifically noted each of

these conclusions, ECF No. 9-2 at 21, Tr. 20, and incorporated the opinions into

the RFC finding. ECF No. 9-2 at 18, Tr. 17 (noting that "claimant is able to

perform simple routine work," "is able to have superficial contact with the public,"

and "should work independently and not in coordination with other co-workers").

The Court finds that the limitations incorporated into the RFC are sufficiently

similar to those opined by Drs. Postovoit and Bailey. *See Turner*, 613 F.3d at 1223

1    (the ALJ need only incorporate limitations consistent with relevant and accepted

2    medical opinion for the RFC to be sufficiently inclusive).

3         The Court finds that the ALJ did not err in failing to consider the check-the-

4    box assessment form included as part of Dr. Postovoit's report. *See* ECF No. 9-7 at

5    139–40, Tr. 614–15. An ALJ may permissibly reject check-the-box reports that do

6    not contain any explanation of the bases for their conclusions. *Crane v. Shalala*, 76

7    F.3d 251, 253 (9th Cir. 1996). Although the ALJ did not specifically discuss

8    Dr. Postovoit's check-the-box findings, the ALJ noted that "[o]pinions rendered on

9    form reports that do not contain significant explanation of the basis for their

10   conclusions may appropriately be accorded little or no weight." ECF No. 9-2 at 22,

11   Tr. 21. The Court makes the reasonable inference that this language applies to the

12   ALJ's analysis of Dr. Postovoit as well as PA-C Shellie Rabidou. As such, the

13   Court finds that the ALJ did not commit reversible error in his analysis of

14   Drs. Postovoit's and Bailey's medical opinions.

15   **E.  Dr. Catherine MacLellan, Ph.D.**

16        Dr. Catherine MacLellan gave Mr. Norris two psychological evaluations, the

17   first on March 9, 2007, and the second on May 8, 2012. In the first evaluation,

18   Dr. MacLellan opined that Mr. Norris had problems with sustained concentration,

19   pace, and persistence, is angry and intolerant of being given instructions, and has

20   little respect for authority. ECF No. 9-7 at 130, Tr. 605. Dr. MacLellan concluded

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 20

that Mr. Norris' "affective and personality disorders will continue to interfere with

his ability to work even if he stays clean and sober." *Id.* In the second evaluation,

Dr. MacLellan opined that Mr. Norris had difficulty with reasoning, poor

judgment, limited insight into his own condition, difficulty with sustained

concentration, pace, and persistence, difficulty getting along with others such as

the public and supervisors, and did not cope well with stress. ECF No. 9-8 at 150,

Tr. 827. Dr. MacLellan concluded that Mr. Norris' "prognosis for recovery is

poor." *Id.* Dr. MacLellan also filled out a Medical Source Statement of Ability to

do Work-Related Activities form in which Dr. MacLellan opined, in check-the-box

format, that Mr. Norris had marked difficulties with making complex decisions as

well as with interacting with the public, supervisors, and coworkers. ECF No. 9-8

at 158–59, Tr. 835–36.

The ALJ gave "little weight" to Dr. MacLellan's 2007 opinion as her opined

global assessment of functioning ("GAF") score of 58 was inconsistent with her

prognosis. ECF No. 9-2 at 22, Tr. 21. The ALJ gave little weight to

Dr. MacLellan's 2012 opinion as both her opined GAF score of 54-58 was

inconsistent with her prognosis and Dr. MacLellan referred to "episodes of

decompensation" which were not present in the medical record. *Id.*

Mr. Norris argues that the ALJ impermissibly substituted his lay opinion for

that of a trained psychologist as pertains to the GAF score. ECF No. 13 at 15.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 21

1    Alternatively, Mr. Norris argues that the ALJ has failed to show any inconsistency.

2    *Id.* The Commissioner argues that the ALJ's finding must be upheld as a

3    reasonable person could find inconsistencies within Dr. MacLellan's medical

4    opinion. ECF No. 16 at 27.

5           The Court finds that the ALJ did not commit reversible error when giving

6    "little weight" to Dr. MacLellan's opinion based on internal inconsistency. A GAF

7    score ranging from 51-60 is indicative of moderate symptoms such as moderate

8    difficulties with social, occupational, or school functioning. *Diagnostic and*

9    *Statistical Manual of Mental Disorders*, 32 (4th ed. 1994). The ALJ found that

10   Dr. MacLellan's GAF finding of 54-58, as indicative of only moderate symptoms,

11   was inconsistent with her findings of "marked" and more serious limitations. ECF

12   No. 9-2 at 22, Tr. 21. "When the evidence before the ALJ is subject to more than

13   one rational interpretation, [the Court] must defer to the ALJ's conclusion."

14   *Batson*, 359 F.3d at 1198. Contrary to Mr. Norris' assertion that "[t]he ALJ has

15   failed to show any inconsistency," ECF No. 13 at 15, Dr. MacLellan noted that

16   Mr. Norris suffered from a number of "marked" limitations and that his "affective

17   and personality disorders will continue to interfere with his ability to work," *see*

18   ECF No. 9-7 at 130, Tr. 605; ECF No. 9-8 at 158–59, Tr. 835–36, only to opine

19   that Mr. Norris' GAF score was 54-58, indicative of "moderate" limitations. ECF

20   No. 9-8 at 149, Tr. 826. The ALJ reasonably relied upon this inconsistency to

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 22

1  discredit Dr. MacLellan's opinion. *See Melton v. Comm'r of Social Sec. Admin.*,

2  442 F. App'x 339, 341 (9th Cir. 2011).

3       Further, the ALJ did not improperly substitute his lay opinion for

4  Dr. MacLellan's expert medical opinion. The ALJ did not purport to diagnose

5  Mr. Norris with a specific GAF score. Instead, the ALJ merely used

6  Dr. MacLellan's stated GAF scores as a means of demonstrating the internal

7  inconsistencies contained in Dr. MacLellan's opinions. As it is the ALJ's role to

8  resolve inconsistencies in the medical evidence, the Court finds that the ALJ did

9  not impermissibly substitute his lay opinion for that of a medical expert.

10      The ALJ also rejected Dr. MacLellan's opinion because she referred to a

11 "'history of episodes of decompensation associated with alcohol,' but the record is

12 devoid of such evidence." ECF No. 9-2 at 22, Tr. 21. Dr. MacLellan noted that

13 "[t]here has been a history of episodes of decompensation associated with alcohol,

14 but [Mr. Norris] has stayed out of legal trouble since he has stayed away from

15 alcohol." ECF No. 9-8 at 150, Tr. 827. Mr. Norris urges the Court to consider

16 evidence in the record that "many of [Mr. Norris'] bad decisions resulting in legal

17 consequences have occurred due to alcohol use." ECF No. 13 at 16 (citing ECF

18 No. 9-7 at 4, Tr. 479; ECF No. 9-7 at 191, Tr. 666). The Commissioner notes that

19 "bad decisions and legal consequences are not the same as 'decompensation.'"

20 ECF No. 16 at 27. As cited by the Commissioner, "[d]ecompensation is 'the failure

1    of defense mechanisms, which results in progressive personality disintegration.'"

2    *Id.* (citing http://medical-dictionary.thefreedictionary.com/decompensation).

3          The Court finds that the ALJ did not reasonably interpret Dr. MacLellan's

4    finding. When reciting Dr. MacLellan's statement, the ALJ omitted the second

5    clause, which stated that "*but* he has stayed out of legal trouble since he has stayed

6    away from alcohol." ECF No. 9-8 at 150, Tr. 827 (emphasis added). As argued by

7    Mr. Norris, the Court concludes that, whatever medical definition

8    "decompensation" may have, Dr. MacLellan intended to utilize the term in relation

9    to Mr. Norris' legal difficulties stemming from his alcohol use. It is pertinent to

10   this discussion that Mr. Norris' most recent legal troubles arose out of a

11   motorcycle accident related to consuming alcohol. *See* ECF No. 9-7 at 4, Tr. 479.

12   Further, Dr. Rubin, in whose opinion the ALJ placed "significant weight," ECF

13   No. 9-2 at 21, Tr. 20, noted that "since 2004, [Mr. Norris] probably had four or

14   more episodes of decompensation." ECF No. 9-2 at 47, Tr. 46. The Court finds that

15   it was not reasonable for the ALJ to partially consider Dr. MacLellan's finding to

16   ignore the obvious meaning intended by Dr. MacLellan.

17         "A decision of the ALJ will not be reversed for errors that are harmless."

18   *Burch*, 400 F.3d at 679. An error is harmless when it is "inconsequential to the

19   ultimate nondisability determination." *Stout*, 454 F.3d at 1055. As the ALJ did not

20   commit reversible error when finding that Dr. MacLellan's opinion was internally

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 24

1    inconsistent due to her opined GAF scores, the Court finds that the ALJ's error

2    concerning his interpretation of the "decompensation" finding to be harmless.

3    Therefore, the ALJ did not commit reversible error when giving Dr. Thompson's

4    medical opinion "little weight."

5    **F.  Dr. Renee Thompson, Psy.D.**

6         Dr. Renee Thompson gave Mr. Norris an adult complex psychological

7    assessment on November 4, 2009. ECF No. 9-8 at 45–52, Tr. 722–29.

8    Dr. Thomson rated Mr. Norris' prognosis as "poor" due to "underlying

9    irritability/hostility/anger." ECF No. 9-8 at 52, Tr. 729. Dr. Thompson also noted

10   that Mr. Norris had "problems of auditory memory, attention, mood, and spelling,"

11   "will have difficulty remembering and carrying simple work related instructions,"

12   and "would have difficulty interacting in a work setting with coworkers and

13   supervisors." *Id.*

14        The ALJ gave "little weight" to Dr. Thompson's medical opinion. ECF

15   No. 9-2 at 23, Tr. 22. The ALJ noted that Dr. Thompson's findings were internally

16   inconsistent as Mr. Norris performed within normal limits on the mental status

17   examination yet was found to have difficulty with simple routine tasks and

18   maintaining focus and concentration. *Id.* The ALJ also found that Dr. Thompson's

19   conclusions were largely based on Mr. Norris' less than fully credible self-report.

20   *Id.*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 25

1    Mr. Norris argues that the ALJ improperly substituted his lay opinion for the

2    expert medical opinion of a trained psychologist. ECF No. 13 at 18. Further,

3    Mr. Norris argues that Dr. Thompson did not largely base her opinion on

4    Mr. Norris' self-report and that, as the ALJ's credibility analysis is flawed, this is

5    an improper reason to reject Dr. Thompson's opinion. *Id.* The Commissioner

6    argues that, as Dr. Thompson's opinion is internally inconsistent, the ALJ did not

7    commit reversible error. ECF No. 16 at 30.

8    The Court finds that the ALJ did not err in finding that Dr. Thompson's

9    opinion was internally inconsistent. During the mental status examination,

10    Mr. Norris was able to repeat the words provided to him by Dr. Thompson, recount

11    events from his personal life over the past few days, give details concerning remote

12    events, was aware of recent national news, and follow the directions provided by

13    Dr. Thompson.  ECF No. 9-8 at 48, Tr. 725. Based on Dr. Thompson's objective

14    findings, the Court cannot conclude that it was unreasonable for the ALJ to find

15    internal inconsistences in Dr. Thompson's medical opinion. For example, as noted

16    by the ALJ, *see* ECF No. 9-2 at 22, Tr. 21, Dr. Thompson's finding that Mr. Norris

17    "will have difficulty remembering and carrying out simple work related

18    instructions" could rationally be interpreted as inconsistent with the objective

19    evaluation. *See* ECF No. 9-8 at 52, Tr. 729; *see also Bayliss v. Barnhart*, 427 F.3d

20    1211, 1216 (9th Cir. 2005) (affirming ALJ rejection of medical opinion where

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 26

1    physician's other recorded observations and opinion contradict assessment). As

2    such, the Court finds that the ALJ did not commit reversible error when finding

3    Dr. Thompson's medical opinion internally inconsistent. Similar to Dr. MacLellan,

4    the ALJ was not impermissibly substituting his lay opinion for that of a medical

5    expert. The ALJ merely noted an inconsistency which allowed the ALJ to resolve

6    competing and conflicting medical opinion testimony.

7        As elements of Dr. Thompson's opinion conflict with opinions of other

8    medical experts, the ALJ was only required to give a "specific and legitimate"

9    reason for rejecting her medical opinion. *Compare* ECF No. 9-8 at 52, Tr. 729

10   (Dr. Thompson's opinion that Mr. Norris "will have difficulty remembering and

11   carrying out simple work related instructions") *with* ECF No. 9-7 at 141, Tr. 616

12   (Dr. Postovoit's opinion that Mr. Norris is "able to understand and carry out simple

13   tasks and some complex tasks").

14       The ALJ's finding that Dr. Thompson's medical opinion contains internal

15   inconsistencies stands as a sufficiently "specific and legitimate" reason to give

16   Dr. Thompson's testimony "little weight." As such, even if the ALJ's finding that

17   Dr. Thompson's opinion was largely based on the claimant's self-report was in

18   error, such error was harmless as the Court can determine that any error was

19   "inconsequential to the ultimate nondisability determination." *See Stout*, 454 F.3d

20

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 27

1  at 1055. Therefore, the ALJ did not commit reversible error when giving

2  Dr. Thompson's medical opinion "little weight."

3  //

4  **G. Dr. Rachael McDougall, Psy.D.**

5      Dr. Rachael McDougall gave Mr. Norris a psychological/psychiatric

6  evaluation on April 16, 2012. ECF No. 9-8 at 178–84, Tr. 855–61. Dr. McDougall

7  rated Mr. Norris as having severe mood dysregulation, moderate attention deficit,

8  marked learning difficulties, and marked antisocial personality traits. ECF No. 9-8

9  at 180, Tr. 857. Dr. McDougall further opined that Mr. Norris suffered moderate

10  limitations in his ability to understand, remember, and follow simple instructions

11  and ability to perform routine tasks. ECF No. 9-8 at 181–82, Tr. 858–59.

12  Dr. McDougall noted that Mr. Norris had marked limitations in his ability to

13  understand, remember, and follow complex instructions, exercise judgment and

14  make decisions, and care for himself, including personal hygiene and appearance.

15  *Id.* Finally, Dr. McDougall opined that Mr. Norris suffered severe limitations in his

16  abilities to relate appropriately to co-workers and supervisors, interact

17  appropriately in public contacts, respond appropriately to and tolerate the pressures

18  and expectations of a normal work setting, and maintain appropriate behavior in a

19  work setting. ECF No. 9-8 at 182, Tr. 859.

20

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 28

1    The ALJ gave "little weight" to Dr. McDougall's medical opinion. ECF

2    No. 9-2 at 23, Tr. 22. The ALJ found that Dr. McDougall's opinion was largely

3    based on Mr. Norris' less than fully credible self-reports. *Id.* Further, the ALJ

4    found that Dr. McDougall's opined GAF score of 45 was indicative of serious

5    symptoms and inconsistent with medical evidence of record. *Id.*

6        Mr. Norris argues that Dr. McDougall did not largely base her opinion on

7    Mr. Norris' self-report and that, as the ALJ's credibility analysis is flawed, this is

8    an improper reason to reject Dr. McDougall's opinion. ECF No. 13 at 21. Further,

9    Mr. Norris argues that Dr. McDougall's opined GAF score is not inconsistent with

10   the opinions of other physicians. *Id.*

11       "[W]hen an opinion is not more heavily based on a patient's self-reports

12   than on clinical observations, there is no evidentiary basis for rejecting the

13   opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *see also Ryan v.*

14   *Comm'r of Social Sec.*, 528 F.3d 1194, 1200 (9th Cir. 2008) (finding that

15   substantial evidence did not support the ALJ's conclusion that the medical expert

16   relied on self-reports more heavily than on his own clinical observations). In

17   *Ghanim*, "the ALJ offered no basis for his conclusion that these opinions were

18   based more heavily on Ghanim's self-reports, and substantial evidence does not

19   support such a conclusion." *Ghanim*, 763 F.3d at 1162. Similar to *Ghanim* and

20   *Ryan*, there is no indication in the record that Dr. McDougall relied on Mr. Norris'

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 29

description of his symptoms more heavily than his own clinical observations. In fact, Dr. McDougall specifically noted that she observed symptoms including severe mood dysregulation and marked antisocial personality traits. ECF No. 9-8 at 180, Tr. 857. The ALJ merely notes that Dr. McDougall's findings are "largely based upon [Mr. Norris'] self-report of symptoms." ECF No. 9-2 at 23, Tr. 22. Without a more thorough explanation, the ALJ's finding cannot be sustained as it is not supported by substantial evidence in the record.

Further, the ALJ found that Dr. McDougall's "assessment of the claimant's GAF score at 45 is inconsistent with the claimant's demonstrated functioning" and that the "medical evidence of record is inconsistent with that finding." *Id.* The ALJ did not attempt to use the assessed GAF score to demonstrate any internal inconsistency within Dr. McDougall's opinion; instead the ALJ attempted to show that Dr. McDougall's assessed GAF score was inconsistent with the opinions of other physicians. *See* ECF No. 9-2 at 22, Tr. 21.

"The opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan*, 169 F.3d at 602. Of the many physicians to offer a medical opinion concerning Mr. Norris, only Drs. Martin, Rubin, Postovoit, Bailey, MacLellan, Thompson, and McDougall gave medical opinions concerning psychological limitations. *See* ECF No. 9-2 at 21–23, Tr. 20–22. As the ALJ gave

"little weight" to the opinions of Drs. MacLellan and Thompson, *see* ECF No. 9-2 at 22–23, Tr. 21–22, the ALJ must have concluded that Dr. McDougall's opinion was "inconsistent" with the opinions of Drs. Martin, Rubin, Postovoit and Bailey. However, all four physicians were nonexamining physicians. *See* ECF No. 9-2 at 42, Tr. 41 (noting that Dr. Rubin formed opinion having reviewed evidence in file), ECF No. 9-2 at 108, Tr. 107 (noting that Dr. Martin formed opinion having reviewed evidence in file), ECF No. 9-7 at 139, Tr. 614 (noting that Dr. Postovoit made findings based on "the evidence in file", ECF No. 9-7 at 184, Tr. 659 (noting that Dr. Bailey affirmed Dr. Postovoit having "read all evidence of file"). Therefore, under *Morgan*, these opinions cannot constitute "substantial evidence" to reject the opinion of Dr. McDougall, an examining physician. As the ALJ has given no indication of other inconsistent medical evidence, the Court finds that the ALJ's finding is not supported by substantial evidence and cannot be sustained.

Based on the above, the ALJ committed reversible error when giving McDougall's medical opinion "little weight." Neither of the reasons proffered by the ALJ are supported by substantial evidence in the record.

**H. PA-C Shellie Rabidou**

PA-C Shellie Rabidou has been Mr. Norris' primary care provider for many years. ECF No. 13 at 22. In 2007, PA-C Rabidou conducted a physical exam which noted limitations with movement of the upper extremities and a limited range of

1   motion of the spine. ECF No. 9-7 at 134, Tr. 609. PA-C Rabidou also opined that

2   Mr. Norris' back pain would cause significant interference with his ability to make

3   a number of physical maneuvers. ECF No. 9-7 at 135, Tr. 610. PA-C Rabidou

4   concluded that Mr. Norris would be unable to perform sedentary employment. *Id.*

5   In 2008, PA-C Rabidou opined that Mr. Norris' back problems would render him

6   unable to sit, stand, walk, lift, or carry on a consistent basis. ECF No. 9-7 at 202,

7   Tr. 677. In 2009, PA-C Rabidou concluded another psychical exam by finding

8   similar physical limitations that would limit Mr. Norris' ability to perform

9   sedentary work. ECF No. 9-8 at 41–43, Tr. 718–20. In 2012, PA-C Rabidou opined

10  that Mr. Norris is disabled from full time work. ECF No. 9-8 at 143, Tr. 820. In

11  summary, PA-C Rabidou noted that "the only humane and appropriate action is to

12  allow [Mr. Norris] disability so that he can at least depend on some support." ECF

13  No. 9-8 at 142, Tr. 819.

14          The ALJ gave PA-C Rabidou's opinion "little weight." ECF No. 9-2 at 22,

15  Tr. 21. The ALJ noted that PA-C Rabidou had assessed nerve root compression,

16  but that MRI results were inconsistent with that finding. *Id.* The ALJ also

17  discounted many of PA-C Rabidou's opinions as they were presented in check-the-

18  box form. *Id.*

19          Mr. Norris argues that the ALJ erred as it is factually incorrect that

20  Mr. Norris did not have nerve root compression and PA-C Rabidou offered many

of her opinions in narrative format. ECF No. 13 at 24–27. The Commissioner

argued that PA-C Rabidou's opinions are poorly explained and inconsistent with

the record. ECF No. 16 at 33–34.

The ALJ cited to the opinion of Dr. Richard A. Dickson in which

Dr. Dickson found "no hard neurologic findings that would suggest ongoing nerve

root impingement." ECF No. 9-8 at 54, Tr. 731. Although Mr. Norris references a

number of other physicians who noted compression, ECF No. 13 at 25, and alleges

that Dr. Dickson's finding was incorrect, ECF No. 21 at 5, it is not the Court's role

to second-guess reasonable interpretations adopted by the ALJ when resolving

inconsistencies in the medical evidence. *See Morgan*, 169 F.3d at 603. As such,

although alternative reasonable explanations may exist, the Court must defer to the

ALJ's decision to credit Dr. Dickson's medical opinion as compared to PA-C

Rabidou's conflicting assessment.

Contrary to Mr. Norris' assertion, the majority of PA-C Rabidou's opinions

are rendered in check-the-box or fill-in-the-blank format. *See* ECF No. 9-7 at 134–

35, 202, Tr. 609–10, 677; ECF No. 9-8 at 41–43, 143, Tr. 718–20, 820. An ALJ

may permissibly reject check-the-box reports that do not contain any explanation

of the bases for their conclusions. *Crane*, 76 F.3d at 253.

As noted by Mr. Norris, several of PA-C Rabidou's opinions are given in

narrative format. For example, in 2008, PA-C Rabidou noted that Mr. Norris

reported his back pain as a seven out of ten without medication and opined that

Mr. Norris' chronic low back pain appeared to be worsening. ECF No. 9-8 at 21,

Tr. 698. In 2012, PA-C Rabidou opined that "there are not [*sic*] treatments that will

allow [Mr. Norris] the mobility and physical capacity to return to any of his

previous types of employment." ECF No. 9-8 at 142, Tr. 819. In conclusion, PA-C

Rabidou noted that Mr. Norris' psychological limitations "would make it difficult

to impossible to be cross-trained into any other kind of work" and that "[a]t this

point the only humane and appropriate action is to allow [Mr. Norris] disability so

that he can at least depend on some support." *Id.*

As discussed above, the ALJ permissibly gave "little weight" to PA-C

Rabidou based on his rational interpretation of Dr. Dickson's finding that

Mr. Norris did not suffer from nerve root compression. Although Mr. Norris may

disagree, inconsistency between a medical opinion and other objective medical

evidence is a sufficiently "specific and legitimate" reason to reject medical

testimony. *Morgan*, 169 F.3d at 603. While, as noted by Mr. Norris, it is true that

an ALJ must "consider all evidence," it is the ALJ's responsible to resolve

conflicts and inconsistencies between medical opinions. As the ALJ's decision was

a rational interpretation of Dr. Dickson's medical opinion, the Court must defer to

the ALJ's finding. The Court finds that the ALJ did not commit reversible error

when giving "little weight" to PA-C Rabidou's medical opinion.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 34

## II.    Credibility Determination

Mr. Norris alleges that the ALJ found he lacked credibility without providing the requisite "clear and convincing reasons." ECF No. 13 at 27. Specifically, Mr. Norris argues that the ALJ improperly considered the lack of objective medical evidence, his activities of daily living, inconsistent statements regarding alcohol and drug use, inconsistent statements regarding criminal history, inconsistent statements regarding education background, demeanor during medical appointments, the failure to engage in treatment, and performance on mental status examinations. *Id.* at 28–34.

### A. Standard for Making Credibility Determination

The Commissioner's credibility determination must be supported by findings sufficiently specific to permit the reviewing court to conclude the ALJ did not arbitrarily discredit a claimant's testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991). If there is no affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony regarding the severity of symptoms.[1] *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

---

[1] The Commissioner argues that the proper standard of review of an ALJ's credibility determination is "substantial evidence." ECF No. 16 at 6 n.1. However,

If the ALJ finds that a claimant's statements are not credible, he need not reject the entirety of a claimant's symptom testimony. *See Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The ALJ may find the claimant's statements about pain to be credible to a certain degree, but discount statements based on his interpretation of evidence in the record as a whole. *See id.* "[T]he ALJ's interpretation of [a claimant's] testimony may not be the only reasonable one . . . [b]ut [if] it is still a reasonable interpretation and . . . supported by substantial evidence . . . it is not our role to second-guess it." *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). However, an ALJ's failure to articulate specifically "clear and convincing" reasons for rejecting a claimant's subjective complaints is reversible error. *Orn v. Astrue,* 495 F.3d 625, 635 (9th Cir. 2007).

In addition to ordinary techniques of credibility evaluation, the ALJ may consider the following factors when weighing the claimant's credibility: the claimant's reputation for truthfulness; inconsistencies either in allegations of limitations or between statements and conduct; daily activities; work record; and

---

as the Ninth Circuit is clear that the "clear and convincing reasons" standard governs, this Court is required to apply binding precedent. *See Garrison v. Colvin*, 759 F.3d 995, 1015 n.18 (9th Cir. 2014).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS ~ 36

1   testimony from physicians and third parties concerning the nature, severity, and

2   effect of the claimant's alleged symptoms. *Light v. Social Sec. Admin.*, 119 F.3d

3   789, 792 (9th Cir. 1997).

4   //

5   **B.  Lack of Objective Medical Evidence for Symptoms**

6          Mr. Norris alleges that the ALJ erroneously found that "the objective

7   medical evidence is inconsistent with the severity alleged by the claimant." ECF

8   No. 13 at 29; ECF No. 9-2 at 22, Tr. 21. Mr. Norris argues that, instead of relying

9   on brief physical consultative evaluations by Drs. Richard Dickson and Steven

10  Rode, the ALJ should have considered other medical evidence that is consistent

11  with Mr. Norris' alleged limitations. ECF No. 13 at 29.

12         Although Mr. Norris may urge the Court to consider the opinions of other

13  examining physicians, the Court must defer to the ALJ's credibility finding if it is a

14  reasonable interpretation of the evidence. Here, Drs. Dickson and Rode opined that

15  Mr. Norris' alleged pain was not supported by hard medical findings. ECF No. 9-2

16  at 19, Tr. 18. Although Mr. Norris may argue that the ALJ should have relied on

17  the allegedly more thorough examinations performed by other physicians, it is the

18  ALJ's, not the Court's, role to weigh and evaluate the evidence. As the ALJ's

19  determination that Drs. Dickson's and Rode's examinations did not support

20  Mr. Norris' alleged pain symptoms is supported by substantial evidence in the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 37

1  record, the Court finds that the ALJ did not commit reversible error when

2  considering the lack of total medical corroboration in the credibility analysis.

3  //

4  //

5  **C. Greater Level of Functioning**

6        Mr. Norris alleges that the ALJ erroneously found that "the claimant is

7  capable of functioning at a level greater than what he reports." ECF No. 13 at 29–

8  30; ECF No. 9-2 at 19, Tr. 18. The ALJ found that several reported activities,

9  including snowmobiling and having a pinecone fight, demonstrated a greater level

10  of functioning. ECF No. 9-2 at 22, Tr. 21. Mr. Norris argues that, as Mr. Norris

11  was injured during these activities, the activities do not present a sufficient basis to

12  conclude that Mr. Norris has a greater level of functioning than reported.

13        Mr. Norris argues that "it is illogical to state that [Mr. Norris] functions at a

14  greater level than what he reports since he in fact reported these very activities."

15  ECF No. 13 at 29. However, the ALJ was merely comparing Mr. Norris' testimony

16  concerning his pain symptoms with records of Mr. Norris' past activities to

17  determine if Mr. Norris had made inconsistent statements. As such, the fact that

18  Mr. Norris reported these activities to medical professionals during examinations

19  does not resolve or negate any inconsistency uncovered by the ALJ. One factor

20  relevant to the credibility analysis is inconsistencies either in allegations of

limitations or between statements and conduct. *Light*, 119 F.3d at 792. Therefore, the Court rejects Mr. Norris' argument as the ALJ would otherwise be precluded from comparing a claimant's past and present statements.

While Mr. Norris provides alternative, reasonable explanations for the conduct noted by the ALJ, it is not the Court's role to second-guess the reasonable conclusions reached by the ALJ. *See Rollins*, 261 F.3d at 857. Mr. Norris does not dispute that he reported the above activities during medical examinations. ECF No. 9-8 at 82, 84, Tr. 759, 761. The Court finds that the ALJ did not commit reversible error when comparing Mr. Norris' reported pain symptoms with past reports that can reasonably be interpreted to indicate a greater level of functioning.

**D. Inconsistent Statements Regarding Alcohol and Drug Use**

Mr. Norris alleges that the ALJ erroneously found that the "claimant has . . . provided inconsistent statements regarding his use of alcohol and marijuana." ECF No. 13 at 30; ECF No. 9-2 at 20, Tr. 19. The ALJ found that, while Mr. Norris reported being clean and sober since 2006 or 2007 with a relapse in 2009, medical records from 2011 and 2012 stated that Mr. Norris reported smoking marijuana and using alcohol daily. ECF No. 9-2 at 20, Tr. 19. Mr. Norris argues that the ALJ failed to demonstrate how these statements are inconsistent. ECF No. 13 at 30.

As noted by the ALJ, a 2011 treatment notes recounts that Mr. Norris "smokes marijuana daily and drinks alcohol daily." ECF No. 9-8 at 82, Tr. 759. Further, in 2012, Mr. Norris reported to Dr. McDougall "binge use of alcohol approximately 3 months ago." ECF No. 9-8 at 181, Tr. 858.

Most of the sections of the record directly cited by the ALJ are not inconsistent, as each statement concerns alcohol use prior to 2009. *See* ECF No. 9-2 at 20, Tr. 19. For example, a 2007 treatment note merely states that Mr. Norris "has been in recovery for a couple of years and is just starting services with OBHC CD program." ECF No. 9-7 at 182, Tr. 657. Another 2007 treatment note states that Mr. Norris stopped drinking in 2005 but suffered a relapse in 2006. ECF No. 9-7 at 192, Tr. 667. During a 2009 examination, Mr. Norris informed Dr. Thompson that he last drunk alcohol about two months prior. ECF No. 9-8 at 46, Tr. 723. The Court finds that it is unreasonable to find Mr. Norris' statements inconsistent in this context. Each of the statement related above was made about Mr. Norris' alcohol use at the time the statement was made. For example, it is not inconsistent for Mr. Norris to report, in 2007, that he stopped drinking in 2005, ECF No. 9-7 at 192, Tr. 667, and then report, in 2011, that he now uses alcohol on a daily basis. ECF No. 9-8 at 82, Tr. 759. The two statements are not connected: neither discussed the same timeframe as the other.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS ~ 40

1    However, in 2011, Mr. Norris informed PA-C Rabidou that he had quit

2    drinking in 2006. ECF No. 9-8 at 131, Tr. 808. This statement is inconsistent with

3    Mr. Norris' 2009 statement to Dr. Thompson in which he admitted consuming

4    alcohol earlier in 2009. *Compare* ECF No. 9-8 at 131, Tr. 808 *with* ECF No. 9-8 at

5    46, Tr. 723. The Commissioner urges the Court to consider Mr. Norris' statement

6    during the second hearing, where Mr. Norris reported that he had last drunk

7    alcohol in 2010. ECF No. 16 at 7. However, the Court is "constrained to review the

8    reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

9    As the ALJ did not cite Mr. Norris' hearing testimony concerning alcohol use as

10   inconsistent with his prior statements, the Court cannot uphold the ALJ's finding

11   on that basis. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (finding

12   that a reviewing court cannot "comb the administrative record to find specific

13   conflicts").

14   Although the ALJ's opinion does note one inconsistent statement concerning

15   alcohol use, *compare* ECF No. 9-8 at 131, Tr. 808 *with* ECF No. 9-8 at 46, Tr. 723,

16   the Court finds that the ALJ did not provide sufficiently "clear and convincing"

17   evidence to support a negative credibility finding based on these purportedly

18   inconsistent statements. The ALJ misconstrued the record, and purported to find

19   inconsistent statements that could not reasonably be interpreted as inconsistent.

20   The ALJ failed to note the sole inconsistency recognized by the Court, as the ALJ

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 41

1    attempted to show that both documents were inconsistent with other, later records,

2    as opposed to each other. *See* ECF No. 9-2 at 20, Tr. 19.

3    **E. Inconsistent Statements Regarding Criminal History**

4        Mr. Norris alleges that the ALJ erroneously found that Mr. Norris "provided

5    inconsistent information regarding his criminal history." ECF No. 13 at 30–31;

6    ECF No. 9-2 at 20, Tr. 19. The ALJ noted that Mr. Norris told a healthcare worker

7    that his criminal history was confined to his teen years, when Mr. Norris in fact

8    had significant adult criminal history. ECF No. 9-2 at 20, Tr. 19. Further, the ALJ

9    found that Mr. Norris told a psychological evaluator that he had not committed a

10   crime since he was thirty, when he had in fact been involved in a criminal

11   proceeding in 2004. *Id.* Mr. Norris argues that the ALJ failed to provide the

12   requisite "clear and convincing" reasons supporting his conclusion. ECF No. 13 at

13   31.

14       The ALJ cited a 2007 treatment note which stated that "[h]e has a criminal

15   history from his teens." ECF No. 9-7 at 182, Tr. 657. Mr. Norris argues that the

16   ALJ improperly attributed this statement to Mr. Norris. ECF No. 13 at 31.

17   However, the paragraph which contains the statement pertaining to criminal history

18   is essentially a list of other statements Mr. Norris made to the treatment provider.

19   *See* ECF No. 9-7 at 182, Tr. 657 (note includes statements such as "Jon reportedly

20   is experiencing problems with depression and anger" and "[h]e says that he has had

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 42

1  a temper since childhood"). As the remaining statements are all attributed to

2  Mr. Norris, it was reasonable for the ALJ to conclude that Mr. Norris misinformed

3  the physician about his criminal history. *See Rollins*, 261 F.3d at 857. Further, it is

4  not unreasonable to interpret Mr. Norris' statement that "[h]e has a criminal history

5  from his teens" as "his criminal history was confined to his teen years." *Compare*

6  ECF No. 9-7 at 182, Tr. 657 *with* ECF No. 9-2 at 20, Tr. 19.

7      While the ALJ noted that "the claimant told one psychological evaluator that

8  he had not committed a crime since he was 30," the ALJ failed to cite to the record

9  for this statement. ECF No. 9-2 at 20, Tr. 19. Although Mr. Norris guesses that the

10  ALJ was referring to a statement by Dr. MacLellan that Mr. Norris "has stayed out

11  of jail since he was 30 other than for failure to pay fines and 20 days for the

12  reckless driving," ECF No. 907 at 127, Tr. 602, it is impossible for the Court to

13  analyze the ALJ's finding without a direct citation. Although the Commissioner

14  argues that the Court is not faced with an impossible task as it must read the record

15  as a whole, ECF No. 16 at 11 n.2 (citing *Gallant v. Heckler*, 753 F.2d 1450, 1453

16  (9th Cir. 1984)), the Court is not permitted to "comb the administrative record to

17  find specific conflicts." *See Burrell*, 775 F.3d at 1138. The Court also takes note

18  that the Commissioner fails to provide a citation for this specific notation in the

19  record. *See* ECF No. 16 at 10–11. As the ALJ failed to cite to the record, the

20

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 43

1  allegedly inconsistent statement concerning Mr. Norris' criminal history is not

2  sufficiently "clear and convincing" to withstand review.

3  **F. Inconsistent Statements Regarding Educational Accomplishments**

4         Mr. Norris alleges that the ALJ erroneously found that "the claimant has

5  provided inconsistent statements regarding his education." ECF No. 13 at 31–32;

6  ECF No. 9-2 at 20, Tr. 19. The ALJ noted that, at various times, Mr. Norris

7  reported having completed through the eighth, tenth, and twelfth grades. ECF

8  No. 9-2 at 20, Tr. 19. Mr. Norris argues that there is no inconsistency between

9  Mr. Norris' various statements.

10        In 2007, Mr. Norris reported that he attended twelfth grade but did not

11 graduate while taking some freshman classes to catch up. ECF No. 9-7 at 192,

12 Tr. 667. Also in 2007, Mr. Norris reported that he had completed through the tenth

13 grade. ECF No. 9-7 at 181, Tr. 656. Finally, in 2012, Mr. Norris reported that he

14 "thinks he finished 8th grade, [and] said was passed into high school." ECF No. 9-

15 8 at 147, Tr. 824. While Mr. Norris attempts to provide an alternative reasonable

16 explanation for the perceived inconsistencies in his statements regarding his

17 education, the Court must defer to the reasonable interpretation of the evidence by

18 the ALJ. *See Rollins*, 261 F.3d at 857. As, based on the three statements cited by

19 the ALJ, it was not unreasonable for the ALJ to conclude that Mr. Norris had

20

1  provided inconsistent statements regarding his education, the Court cannot second-

2  guess the ALJ's finding.

3  **G. Demeanor During Medical Appointments**

4       Mr. Norris alleges that the ALJ erroneously found that "[t]he claimant has

5  alleged significant anger and temper problems, but he has generally been described

6  as 'delightful,' pleasant and cooperative by treating and examining health care

7  providers." ECF No. 13 at 32; ECF No. 9-2 at 20, Tr. 19. Mr. Norris argues that

8  "the ALJ would expect to see Mr. Norris exploding at every medical appointment

9  in order to substantiate his statements." ECF No. 13 at 32.

10      The Court finds that Mr. Norris misinterprets the ALJ's finding. The ALJ

11  did not state that he would expect Mr. Norris to be angry at every medical

12  appointment. The ALJ merely found that Mr. Norris demeanor, generally

13  delightful, pleasant, and cooperative, partially undermined the functional

14  limitations as alleged by Mr. Norris. *See* ECF No. 9-2 at 20, Tr. 19. As the ALJ

15  made a reasonable finding supported by substantial evidence in the record, the

16  Court cannot second-guess the ALJ's conclusion.

17  **H. Failure to Seek Treatment**

18      Mr. Norris alleges that the ALJ erroneously found that "the claimant has not

19  engaged in treatment to the extent that one would expect given the alleged severity

20  of his pain symptoms." ECF No. 13 at 32–33; ECF No. 9-2 at 20, Tr. 19. The ALJ

listed a number of instances where Mr. Norris had discontinued physical therapy or

failed to seek treatment for his psychological symptoms. ECF No. 9-2 at 20, Tr. 19.

Mr. Norris argues that the ALJ failed to provide the requisite "clear and

convincing" reasons to support this finding. ECF No. 13 at 33.

Mr. Norris alleges that, while the ALJ "did not think his physical therapy

was adequate," "the ALJ did not specify what the extent of treatment he would

expect might be." *Id.* Mr. Norris misconstrues the ALJ's finding. The ALJ did not

render an opinion as to the amount of psychical therapy Mr. Norris should have

sought. The ALJ was merely noting instances in the record where Mr. Norris,

despite his alleged severe pain symptoms, failed to follow through with physical

therapy. *See* ECF No. 9-8 at 86, Tr. 763 (noting that Mr. Norris was "discharged

from physical therapy" as "he has either cancelled or not shown up for ensuing

visits and has made no effort to reschedule"). Mr. Norris states that he failed to

follow through on physical therapy because his structural issues were beyond the

scope of what physical therapy could address. ECF No. 13 at 33. However, even if

Mr. Norris has proffered an alternative reasonable explanation, it is not this Court's

role to second-guess the reasonable conclusions reached by the ALJ. *See Rollins*,

261 F.3d at 857. The Court finds that it was not unreasonable for the ALJ to

conclude that Mr. Norris' failure to continue physical therapy for his allegedly

serious pain symptoms detracted from his credibility.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 46

1    Mr. Norris alleges that the ALJ incorrectly considered that he was not taking

2    pain medication in 2009. ECF No. 13 at 33. The ALJ cited a treatment note in

3    which Mr. Norris reported that he was "not taking anything for his pain currently."

4    ECF No. 9-2 at 20, Tr. 19 (citing ECF No. 9-8 at 88, Tr. 765). However, the ALJ

5    omitted the following sentence which stated that Mr. Norris "had stopped taking

6    the Norco for a while secondary to fears of building a tolerance and becoming

7    addicted." ECF No. 9-8 at 88, Tr. 765. The Court finds that it was unreasonable for

8    the ALJ to omit the second sentence which provided an explanation underlying

9    why Mr. Norris was not taking pain medication at the time. As this explanation

10   unambiguously demonstrates that Mr. Norris was not failing to take pain

11   medication due to a lack of need for treatment, the Court finds that the ALJ erred

12   as his proffered conclusion was not a reasonable interpretation of the evidence.

13   Mr. Norris alleges that the ALJ impermissibly considered his failure to seek

14   treatment for his psychological symptoms. ECF No. 13 at 33. The ALJ cites to

15   treatment notes from the Okanogan Behavioral Healthcare and Medical Facility.

16   ECF No. 9-7 at 176–83, 191–93, Tr. 651–58, 666–68; ECF No. 9-9 at 2–4,

17   Tr. 862–84. However, as these records indicate that Mr. Norris continued to return

18   to the facility for services over a two year period, it is unreasonable to conclude

19   that Mr. Norris did not follow through on treatment based on these records. *See*

20   ECF No. 9-9 at 2–4, Tr. 862–84 (listing treatment notes from 2007 to 2009). As

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 47

noted above, the Court is "constrained to review the reasons the ALJ asserts." *Connett*, 340 F.3d at 874. The Court is also not permitted to "comb the administrative record to find specific conflicts." *See Burrell*, 775 F.3d at 1138. As the Court finds that it was unreasonable for the ALJ to conclude that treatment notes showing a continuing course of treatment from 2007-2009 demonstrated that Mr. Norris had failed to follow through on treatment, the Court finds that the ALJ erred in finding that Mr. Norris failed to seek treatment for his psychological symptoms.

## I. Performance on Mental Status Examinations

Mr. Norris alleges that the ALJ erroneously found that "the claimant's performance on mental status examinations was generally within normal limits." ECF No. 13 at 33–34, ECF No. 9-2 at 20, Tr. 19. Mr. Norris argues that the ALJ reached this conclusion by failing to properly account for rejected medical opinion evidence. ECF No. 13 at 34. As the Court has found that the ALJ did not err in discounting the opinions of Drs. MacLellan and Thompson, the ALJ could not be expected to take account of their opinions in the credibility analysis. However, as the ALJ improperly rejected Dr. McDougall's medical opinion, the ALJ's finding is no longer supported by substantial evidence in the record. *See* ECF No. 9-8 at 178, Tr. 855 (Dr. McDougall's finding that Mr. Norris suffered from bipolar disorder, ADHD, and a personality disorder with antisocial features). As such, the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS ~ 48

1    Court finds that the ALJ erred in finding that Mr. Norris lacked credibility due to

2    normal results on mental status examinations.

3    **J.  Error Analysis**

4         In summation, the Court finds that the ALJ erred by considering the

5    following elements in the credibility analysis: Mr. Norris' (1) purportedly

6    inconsistent statements regarding alcohol and drug use; (2) purportedly

7    inconsistent statement regarding criminal history; (3) 2007 statement that he was

8    not currently taking pain medication; (4) failure to seek treatment for his

9    psychological conditions; and (5) good performance on mental status

10   examinations.

11        "A decision of the ALJ will not be reversed for errors that are harmless."

12   *Burch*, 400 F.3d at 679. An error is harmless when it is "inconsequential to the

13   ultimate nondisability determination." *Stout*, 454 F.3d at 1055.  "So long as there

14   remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility'

15   and the error 'does not negate the validity of the ALJ's ultimate [credibility]

16   conclusion,' such is deemed harmless and does not warrant reversal." *Carmickle v.*

17   *Comm'r, Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (internal

18   citations omitted). "[T]he relevant inquiry . . . is not whether the ALJ would have

19   made a different decision absent the error . . . [but] is whether the ALJ's decision

20   remains legally valid, despite such error." *Id.*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 49

1    The ALJ permissibly considered the following factors in discrediting

2    Mr. Norris' testimony: (1) the lack of objective medical corroboration for

3    Mr. Norris' back pain symptoms; (2) instances that demonstrate a greater level of

4    functionality than as testified to by Mr. Norris; (3) one inconsistent statement

5    regarding Mr. Norris' criminal history; (4) inconsistent statements regarding

6    Mr. Norris' education; (5) Mr. Norris' demeanor during medical appointments; and

7    (6) Mr. Norris' failure to continue physical therapy.

8    The Court finds that the above provide sufficiently "clear and convincing"

9    reasons for rejecting the claimant's testimony regarding the severity of

10   symptoms. *See Reddick*, 157 F.3d at 722. As the overall credibility finding

11   remains supported by other legitimate "clear and convincing reasons," the Court

12   finds that the ALJ did not commit reversible error when noting the improperly

13   considered factors discussed above.

14   **III.    Rejection of Lay Witness Statement**

15       Mr. Norris alleges that the ALJ impermissibly rejected the lay witness

16   opinion of Toni Stewart. ECF No. 13 at 34–36. Ms. Stewart noted that Mr. Norris

17   does not do "much of anything" due to his back pain. ECF No. 9-6 at 21, Tr. 396.

18   She stated that Mr. Norris sometimes needs assistance getting dressed, ECF No. 9-

19   6 at 22, Tr. 397, and that Mr. Norris cannot get around. ECF No. 9-6 at 25, Tr. 400.

20   Ms. Stewart reported that Mr. Norris "doesn't take orders well . . . [and] doesn't

like people bossing him around." ECF No. 9-6 at 26, Tr. 401. Ms. Stewart

concluded that "I think his disabilities cause him to keep losing jobs because

physically or mentally it just doesn't work out for him." ECF No. 9-6 at 28,

Tr. 403.

The ALJ "carefully considered" Ms. Stewart's statement. ECF No. 9-2 at 23,

Tr. 22. After noting that "Ms. Stewart's observations regarding the claimant's

functional abilities do not establish that the claimant is disabled," the ALJ found

Ms. Stewart's statement "somewhat credible." *Id.* Specifically, the ALJ noted that

Ms. Stewart's statement is "inconsistent with the medical evidence of record" and

"inconsistent with the claimant's reported level of activity throughout the record."

*Id.*

"Lay testimony as to a claimant's symptoms or how an impairment affects

the claimant's ability to work is competent evidence that the ALJ must take into

account." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). When rejecting

the testimony of a lay witness, the ALJ "must give reasons that are germane to

each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The

Commissioner urges the Court to compare the ALJ's reasoning with that in

*Bayliss*. ECF No. 16 at 37 (citing *Bayliss*, 427 F.3d at 1218). In *Bayliss*, the court

noted that "[i]nconsistency with medical evidence" is a permissible germane

reason for discrediting the testimony of a lay witness. *Bayliss*, 427 F.3d at 1218.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 51

1    The court concluded that "[t]he ALJ accepted the testimony of Bayliss's family

2    and friends that was consistent with the record of Bayliss's activities and objective

3    evidence in the record; he rejected portions of their testimony that did not meet this

4    standard." *Id.*

5          Mr. Norris argues that the ALJ impermissibly rejected Ms. Stewart's

6    statement as she is "not medically trained to make exacting clinical observations."

7    ECF No. 13 at 35 (citing ECF No. 9-2 at 23, Tr. 22). However, the Court finds

8    that, based upon reading the ALJ's conclusion as a whole, the ALJ did not reject

9    Ms. Stewart's statement due to a lack of medical training. As quoted above,

10   inconsistencies between Ms. Stewart's statement and the record were the primary

11   reasons the ALJ found Ms. Stewart not entirely credible.

12         Mr. Norris argues that Ms. Stewart's statement is in fact consistent with

13   much of the medical opinion rejected by the ALJ. ECF No. 13 at 36. As discussed

14   above, the ALJ did not err in giving little weight to the opinions of Drs. MacLellan

15   and Thompson. However, the ALJ improperly discounted Dr. McDougall's

16   opinion, which diagnosed Mr. Norris with a range of "moderate" to "severe"

17   functional limitations. ECF No. 9-8 at 181–82, Tr. 858–59. As such, the ALJ's

18   conclusion that "[t]he undersigned is unable to give significant weight to witness

19   statements that are inconsistent with the medical evidence of record," ECF No. 9-2

20   at 23, Tr. 22, is not supported by substantial evidence in the record.

The ALJ discounted Ms. Stewart's opinion as the statement was

"inconsistent with the claimant's reported level of activity throughout the record."

*Id.* The ALJ had previously discussed the aforementioned snowmobiling and

pinecone fight as inconsistent activities. ECF No. 9-2 at 19, Tr. 18. Further, other

"activities" noted by the ALJ include that Mr. Norris "is able to provide for his

own personal needs and complete his basic activities of daily living in a timely

manner," go shopping, and take his sister's dog for a walk. ECF No. 9-2 at 16,

Tr. 15. As the ALJ need only provide "reasons that are germane to each witness,"

*Dodrill*, 12 F.3d at 919, the Court finds that the ALJ's conclusion that

Ms. Stewart's statement was inconsistent with Mr. Norris' reported activities

provided a sufficiently "germane" reason to discredit Mr. Stewart's testimony.

Therefore, the Court finds that the ALJ did not commit reversible error by only

giving Ms. Stewart's statement "some weight."

**IV.   Step Five Hypothetical**

Mr. Norris argues that, when considering the errors identified above, the

ALJ's analysis under step five of the sequential process was erroneous and must be

reversed. ECF No. 13 at 36–37.

In step five of the sequential process, an ALJ may pose hypothetical

questions to a VE in order to determine whether employment opportunities exist in

significant numbers in the national economy, given the claimant's RFC, age,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 53

education, and work experience. ECF No. 9-2 at 24, Tr. 23. "[A] hypothetical

question should 'set out all of the claimant's impairments.'" *Gallant*, 753 F.2d at

1456 (internal citation omitted). "Unless the record indicates that the ALJ had

specific and legitimate reasons for disbelieving a claimant's testimony as to

subjective limitations such as pain, those limitations must be included in the

hypothetical in order for the vocational expert's testimony to have any evidentiary

value." *Embrey*, 849 F.2d at 423. "If the assumptions in the hypothetical are not

supported by the record, the opinion of the vocational expert that claimant has

residual working capacity has no evidentiary value." *Gallant*, 753 F.2d at 1456.

Hypotheticals posed to a VE "must be upheld as long as they are supported by

substantial evidence." *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986).

The ALJ posed the following hypothetical to the VE:

> let's assume you're dealing with an individual who's the same age as
> the claimant, same education, same past work experience. Further
> assume that the claimant retains the residual functional capacity for
> simple, routine, light work as defined by Social Security regulations;
> who'd also have the following additional limitations: occasional
> postural movements, could not operate vibrating equipment, could only
> occasionally push and pull light objects, could not have any intensive
> torqueing or twisting of his upper body, should not have to frequently
> turn his head; could only occasionally full-extended . . . reach with his
> right upper extremity, full-extended reach, arm's length, so forth;
> should not be exposed to concentrated levels of gases, odors, dusts,
> fumes.

ECF No. 9-2 at 83–84, Tr. 82–83. The VE responded that jobs existed in the

national economy for an individual sharing those characteristics including as a

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 54

host, telephone solicitor, and surveillance system monitor. ECF No. 9-2 at 84–86, Tr. 83–85. The ALJ then added the following additional limitations:

> stand or walk for four hours in an eight-hour day having a sit/stand option, four sitting; no direct access to drugs or alcohol; should not be in charge of the safety of others; superficial public contact; occasional distraction to coworkers once a month; should work independently, not in coordination with coworkers.

ECF No. 9-2 at 86, Tr. 85. The VE opined that, while the additional limitations would eliminate all the previously mentioned jobs, *id.*, an individual sharing those characteristics could perform the duties of a final assembler or microfilm document preparer.[2] ECF No. 9-2 at 89–90, Tr. 88–89.

_____

[2] The ALJ, while questioning the VE, found that an individual sharing these characteristics could also continue to perform the duties of a surveillance system operator. ECF No. 9-2 at 88, Tr. 87. However, based on the hearing transcript, the VE testified that such an individual could *not* perform the duties of a surveillance system operator and the ALJ overruled the VE's expert opinion based on the ALJ's "understanding of the job." *Id.* As the ALJ did not ultimately include surveillance system operator as an available job in the national economy in the final decision, *see* ECF No. 9-2 at 24, Tr. 23, the Court finds the ALJ's imposition of his lay opinion to be harmless.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS ~ 55

As discussed above, the ALJ erred by not fully considering the medical opinions of Drs. Martin, Rubin and McDougall. Specifically, the ALJ failed to incorporate Dr. Martin's opinion concerning Mr. Norris' ability to interact with supervisors and limitations as to concentration, persistence, and pace into the RFC finding. The ALJ further failed to incorporate Dr. Rubin's opinion concerning Mr. Norris' concentration and motivation based limitations. As to Dr. McDougall, the ALJ improperly discredited her entire medical opinion, resulting in the omission of numerous opined psychological limitations. As the RFC, and subsequent VE hypothetical, failed to incorporate all of Mr. Norris' relevant limitations, both were flawed and are not supported by substantial evidence in the record. Therefore, the Court finds that the opinion of the vocational expert that claimant has residual working capacity has no evidentiary value, *Gallant*, 753 F.2d at 1456, and the ALJ committed reversible error.

## V.    Remand for Immediate Award of Benefits

Mr. Norris urges that, should this Court find any reversible error in the ALJ's decision, the Court should remand for the immediate award of benefits. ECF No. 13 at 37.

The ordinary remand rule applies to Social Security cases. *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). As the Ninth Circuit has noted:

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 56

[i]f the reviewing court determines 'that the agency erred in some respect in reaching a decision to deny benefits,' and the error was not harmless, sentence four of § 405(g) authorizes the court to 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing . . . [W]hen the record before the agency does not support the agency action, . . . the agency has not considered all relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare cases, is to remand to the agency for additional investigation or explanation.

*Id.* (internal citations omitted).

Additionally, district courts have statutory authority "to reverse or modify an administrative decision without remanding the case for further proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The exercise of such authority "was intended to be discretionary." *Id.* The Ninth Circuit applies a three-step framework to "deduce whether this is one of the rare circumstances where we may decide not to remand for further proceedings." *Treichler*, 775 F.3d at 1103. This is referred to as the "credit-as-true" rule. *Garrison*, 759 F.3d at 1019. Under the first step, the Court must determine whether "the ALJ has failed to provide legally sufficient reasons for rejecting . . . claimant testimony." *Treichler*, 775 F.3d at 1103 (internal citation omitted). The Court concludes, for the reasons stated above, that the ALJ did not provide legally sufficient reasons for rejecting portions of Drs. Martin's and Rubin's medical opinions and the entirety of Dr. McDougall's medical opinion.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS ~ 57

Under the second step, the Court must "turn to the question [of] whether further administrative proceedings would be useful." *Id.* At this stage, the Court considers "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether claimant's entitlement to benefits is clear under the applicable legal rules." *Id.* at 1103–04. Dr. McDougall opined that Mr. Norris suffered a "severe" limitation in his ability to relate appropriately to supervisors as Mr. Norris "is not able to tolerate and respond appropriately to the pressures and expectations of a normal work setting." ECF No. 9-8 at 182, Tr. 859. No other treating or examining physician opined that Mr. Norris had no difficulty interacting with supervisors. *See* ECF No. 9-8 at 150, Tr. 827 (Dr. MacLellan's opinion that Mr. Norris has difficulty getting along with supervisors); ECF No. 9-8 at 52, Tr. 729 (Dr. Thompson's opinion that Mr. Norris has difficulty getting along with supervisors). Although the medical providers differ on the severity of the limitation, only nonexamining physicians Drs. Postovoit, Bailey, and Martin opine that Mr. Norris' limitation concerning supervisors would allow him to potentially function in a work-setting.

The Court can find no basis to allow the Commissioner yet another opportunity to discount the opinions of examining physicians in favor of nonexamining physicians. *See Garrison*, 759 F.3d at 1021. As such, the Court

1  finds that the record is clear that Mr. Norris has a functional limitation in his ability

2  to interact appropriately with supervisors.

3          Under the third step, the Court must determine whether, "if the improperly

4  discredited evidence were credited as true, the ALJ would be required to find the

5  claimant disabled on remand." *Id.* at 1020. Mr. Norris' counsel asked the VE

6  whether an individual with a "marked" limitation in their ability to interact

7  appropriately with supervisors, in conjunction with a number of other "marked"

8  social limitations, could find work in the national economy. ECF No. 9-2 at 92–93,

9  Tr. 91–92. The VE responded that "I would not expect such an individual to be

10  able to maintain employment for any substantive period of time in any job." ECF

11  No. 9-2 at 93, Tr. 92. The VE had previously defined "marked" as a "frequent,"

12  but not "constant," level of limitation. ECF No. 9-2 at 92, Tr. 91.

13          The "credit-as-true" rule does not require a VE to "address the precise work

14  limitations established by the improperly discredited testimony." *Benecke v.*

15  *Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). "Requiring remand for further

16  proceedings any time the vocational expert did not answer a hypothetical question

17  addressing the precise limitations established by improperly discredited testimony

18  would contribute to waste and delay and would provide no incentive to the ALJ to

19  fulfill her obligation to develop the record." *Id.* Instead, the key consideration is

20  whether remanding for further administrative proceedings would serve a useful

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 59

1    purpose or would instead unnecessarily extend a claimant long wait for benefits.

2    *Id.*

3          Crediting Dr. McDougall's opined "severe" limitation as to Mr. Norris'

4    ability to interact appropriately with supervisors as true, the Court finds that the

5    ALJ would be required to find Mr. Norris disabled on remand. The VE testified

6    that an individual with a "marked" or "frequent" inability to interact appropriately

7    with supervisors, in conjunction with other traits shared by Mr. Norris, would not

8    be able to find work in the national economy. ECF No. 9-2 at –92–93, Tr. 91–92.

9    The VE previously had testified that Mr. Norris would be unable to return to any of

10   his prior occupations. ECF No. 9-2 at 84, Tr. 83. As such, the Court finds that

11   Dr. McDougall's opinion, when properly credited, established that Mr. Norris

12   would be unable to maintain employment due to his social limitations.

13         The Court also considers the lengthy delay that Mr. Norris has faced in his

14   pursuit of benefits. Mr. Norris first applied for benefits on December 13, 2006,

15   over nine years ago. ECF No. 9-2 at 12, Tr. 11. Ninth Circuit precedent establishes

16   that it is appropriate for the Court to consider the length of time a claimant has

17   been delayed by administrative proceedings. *See Vertigan v. Halter*, 260 F.3d

18   1044, 1054 (9th Cir. 2001) ("Based on the result of Appendix 2 and the fact that

19   Ms. Vertigan initially applied for disability benefits back in 1985, more than

20   sixteen years ago, we find it appropriate to remand for an award of benefits."); *see*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 60

*also Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988) ("Delaying the payment of benefits by requiring multiple administrative proceedings that are duplicative and unnecessary only served to cause the applicant further damage—financial, medical, and emotional."). To remand for further proceedings would give the Commissioner a third bite at the apple, when the "credit-as-true" rule stands to deter both second bites and an unfair "heads we win; tails, let's play again" system of disability benefits adjudication. *Benecke*, 379 F.3d at 595; *see also Treichler*, 775 F.3d at 1111 (Tashima, J., dissenting) (dissenting from decision to remand for further proceedings as "the majority gives the Commissioner precisely that second bite at the apple and makes a shambles of the credit-as-true rule").

As the Court finds that the evidence conclusively demonstrates that Mr. Norris is unable to sustain gainful employment for any amount of time in the national economy, the Court will not grant the Commissioner a third bite at the apple and prolong Mr. Norris' pursuit of disability benefits into the next decade. Under Ninth Circuit precedent, a remand for the calculation and award of benefits is both appropriate and required.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's motion for summary judgment, **ECF No. 13**, is **GRANTED**.

2. Defendant's motion for summary judgment, **ECF No. 16**, is **DENIED**.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR AWARD OF BENEFITS ~ 61

1    3. This case is **REMANDED** to the Commissioner for the immediate

2        calculation and award of benefits.

3    4. **JUDGMENT** shall be entered for the Plaintiff.

4        The District Court Clerk is hereby directed to enter this Order, enter

5    judgment accordingly, provide copies to counsel, and to **close this case**.

6        **DATED** this 2nd day of January, 2016.

7                                    _____*s/ Rosanna Malouf Peterson*_____
                                       ROSANNA MALOUF PETERSON
8                                        United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20